## Overseers of the Poor of Lower Augusta Township, Plffs. in Err., *v.* Overseers of the Poor of Howard Township.

A man who while a minor derives from his father a settlement in Pennsylvania, but afterward removes to another state and there gains a settlement, loses thereby his settlement in Pennsylvania; and if, upon his return to Pennsylvania, he becomes chargeable as a pauper before regaining a settlement, the county in which he becomes chargeable is liable for his removal and maintenance.

An appeal, regularly taken under the act of 1836, from an order of removal, will not be stricken off for the mere error of the clerk of the quarter sessions in docketing it to the wrong term.

(Argued April 26, 1887. Decided May 9, 1887.)

January Term, 1886, No. 355, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Quarter Sessions of Northumberland County to review a judgment dismissing a motion to strike off an appeal from an order of removal of a pauper, and discharging the order. Affirmed.

This was an appeal by the overseers of the poor of Howard township from an order obtained by the overseers of Lower Augusta township for the removal of O. Perry Randal, a pauper, from the former to the latter township, dated May 16, 1885.

On June 3, 1885, the appellants served on the attorney for the appellees a notice that the former had "appealed to the next court of quarter sessions of the peace to be holden for the said county of Northumberland," and that the appeal would be "duly prosecuted at the next court to be holden as aforesaid."

Further service of this notice was waived on the part of the overseers of Lower Augusta, by their attorney, on the same day. According to this notice the overseers of Lower Augusta township attended the September sessions to meet the appeal, but no

---

NOTE.—The settlement of a pauper is lost by a removal into another state and the acquiring of a new settlement there. Plumcreek Twp. v. Elderton, 129 Pa. 626, 18 Atl. 549; Juniata County v. Delaware Twp. 107 Pa. 68; Braintrim Twp. v. Windham Twp. 10 Pa. Co. Ct. 250. But it must appear that a new settlement was acquired in the second state. Parker City v. DuBois, 20 W. N. C. 81; Middle Coal Field Poor Dist. v. Poor District. 17 Phila. 658.

appeal came up during that session. At an argument court, held on June 22, 1885, without notice to the appellees, the appellants presented their petition to the court, in which they "begged that an appeal may be allowed them," and the court indorsed on the back of the petition "appeal allowed," and ordered it to be put on the next argument list, which list, under the rules of court, was to be argued on the fourth Monday in September, after the September sessions were over, the court having, on May 27, preceding, ordered that sessions to last three weeks from the first Monday in the month. The cause came before the court for trial October 26, when the appellees presented a motion to strike off the appeal and confirm the order of removal. This motion the court ordered to be put on the next argument list, and both parties agreed to a continuance until the next term, when the case was heard.

ROCKEFELLER, P. J., upon overruling the motion to strike off the appeal and discharging the order of removal, filed the following opinion:

Oliver Perry Randal, the pauper, was born in Clearfield county, Pennsylvania, in January, 1845. At an early age he came with his father to Howard township, Centre county. In August, 1862, he enlisted for nine months in the 136th Pennsylvania Volunteers.

He was discharged in May, 1863, and remained at home until March, 1864, and then enlisted in a Pennsylvania Artillery Company, and served until January, 1866, when he was finally discharged from the military service at or near Richmond, Virginia. He then entered the service of the Freedmen's Bureau as a clerk, and served therein until about April, 1868, when he was employed as a clerk by Captain W. A. Elderkin, a commissary of subsistence in the United States Army.

He remained with Captain Elderkin until April, 1876. At that time the captain was transferred to another station, and Randal did not go with him. He seems to have left the government employ and remained at Pueblo, county of Pueblo, Colorado, during the year from April, 1876, to April, 1877. During this year he had his wife and children with him, and kept house in Pueblo. He did what he could to make a living, and on the 13th of September, 1876, he was appointed to fill a vacancy in the office of county clerk of Pueblo county, an office

to which only a qualified voter, resident for one whole year in the county, was eligible. He filled the office until in December, 1876, having in the meantime been an unsuccessful candidate before his party convention for nomination to the same office.

He remained in Pueblo until April, 1877. On the 27th of March, 1877, he wrote his father that he was "not doing anything regularly this month, but have managed to pick up enough to cover expenses. I shall try to remain here until fall and try again for the county clerk's position. If not I may go to Elderkin again." See also letters to his sister.

He was regularly assessed with taxes for the year 1875, and paid the same. He had also connected himself with a Masonic lodge. In April, 1877, he again took service with Captain Elderkin, and remained with him until July, 1882, when he was again out of government employment until March, 1883, when he was again employed by Captain Elderkin, and served until March, 1884, when he finally left the government service. He then came back to Pennsylvania, and went to Philadelphia to obtain employment, having also visited his father in Howard township. It seems he was unable to find employment. Just how and where he lived for some time does not appear; but part of the time he was with his father in Howard township. In February, 1885, he came to Lower Augusta township, Northumberland county, where he had a sister living, and was there placed on that township as a pauper. It is a singularly pitiful case.

On the 16th of May, 1885, the overseers of the poor of Lower Augusta took out an order of removal to Howard township, Centre county, knowing that the pauper's father had a settlement there, and believing that the pauper still held his settlement which he had derived from his father. The pauper showed signs of insanity, and was finally taken to the asylum for the insane, at Danville, where he remains, and has continued to grow worse. His father is a good man, but too poor to support him. He (the pauper) has always conducted himself properly, was industrious and sober. Whether he was extravagant in his living does not appear, but his employment seems to have been pretty regular and at fair salaries. His family is at Richmond, Virginia, with his wife's friends.

The pauper never had a settlement in Lower Augusta township, and having been removed from that township to Howard

township, it became necessary to show that he was last settled there. The evidence shows clearly, and I find the fact, that William Randal, the pauper's father, gained a settlement in Howard township. He lived there and was assessed with public taxes in 1861, 1862, and 1863, etc., and paid the same. He also owned a small amount of real estate, and indeed, there is no dispute as to his having a settlement in Howard township. The pauper went there with him when a minor, and was a part of his family, and derived a settlement from him. This also is not disputed. Howard township, however, alleges that the pauper abandoned his settlement in Pennsylvania and since gained a settlement of his own in the city of Pueblo, Pueblo county, Colorado; and that being so, he lost his settlement in Pennsylvania.

If that is so, then according to the case of Juniata County v. Delaware Twp. 107 Pa. 68, the settlement in Howard township is gone. The pauper having become insane, and having only had a residence and not a settlement in Northumberland county, that county is chargeable with the expense of removal and maintenance, without remedy over against Lower Augusta, if he has been committed by the court of quarter sessions, provided, of course, he has no settlement in Howard township.

Perhaps, under the act of 1883, the county and state are jointly to pay such expenses. It is the duty of the court, however, to determine this case as it stands, and according to the law and the evidence. By the laws of Colorado, sixty days' continuous residence in any county of said state gives the party so residing a settlement for poor purposes in said county. By the 10th section of the act of the legislature of that state, which became of full force and effect on the first day of July, 1868, it is enacted that "the term 'residence' mentioned in this chapter shall be taken and considered to mean the actual residence of the party, or the place where he or she was employed, or in case he or she was in no employment, then it shall be considered and held to be the place where he or she made his or her home."

I am of opinion, and so find from the evidence in the case, that O. Perry Randal, the pauper, gained a settlement in Pueblo county, Colorado, by having resided there more than sixty days, he having been employed there and made his home there during that time.

As to the motion to strike off the appeal, I am of opinion that

it cannot be sustained. The appeal was taken in May, at a time when the May term was in session; while the argument court for that term was being held it was filed in court, and directed to be put on the argument court list for the next term or sessions, which was September term. The argument day was fixed by rule of court; but that day generally comes on the Monday following the week for which the term is ordered to continue. It is impossible to stop jury trials and take up cases of this kind during those weeks; and it has always been the practice to hear cases appealed to the next term on the argument day.

In this case the party had appealed in time and filed it before the next term, and the only thing that can be said is that the clerk made a mistake in docketing it to the May sessions instead of the September sessions. The cases decided are all cases where it was alleged that the appeal was taken too late. In this case the appeal was regularly taken in May, and notice given that it would be heard at the next term. The parties did all they could and will not be allowed to suffer on account of a supposed mistake of the court or the clerk.

In point of fact, the September sessions were, by order of court, continued over the argument day, the time fixed for the hearing.

The order of removal is discharged.

The assignments of error specified the action of the court in refusing to strike off the appeal and in discharging the order of removal.

*S. P. Wolverton* and *Lewis Dewart,* for plaintiffs in error.— This case was never appealed to or tried in the next sessions after the order of removal was taken out; in fact there never was an appeal at all, and the notice received by the plaintiffs in error was not a notice of the time when an appeal was allowed by the court or of the time when the case was tried.

Section 19 of the act of 'June 13, 1836 (P. L. 546), says: "Provided always, That any person aggrieved by any such order of removal, may appeal to the next court of quarter sessions, for the county from which such poor person may be removed, and not elsewhere; and if there be any defect of form in such order, the said court shall cause the same to be amended, without cost to the party, and after such amendment if the same be necessary

shall proceed to hear and determine the cause upon its truth and merits; but no such cause shall be proceeded in, unless reasonable notice shall have been given by the party appellant to the overseers of the district from which the removal shall have been made, the reasonableness of which notice shall be determined by the said court at the session to which the appeal may be made; and if it shall appear to them that reasonable notice was not given, they shall adjourn the appeal to their next session and then determine the same."

The appeal cannot be taken to any other court than the next court of quarter sessions after the order of removal is taken out. Northampton County v. Limestone Twp. 68 Pa. 388.

The policy of the statute is to commit pauper cases to the jurisdiction of the quarter sessions, that speedy relief and justice may be administered. Sugarloaf Twp. v. Schuylkill County, 44 Pa. 483.

A term of court is a fixed period of time, and an argument court is not a part of a sessions. Cherry Twp. v. Marion Twp. 96 Pa. 532.

We will admit that the practice has been in our court to allow appeals in cases of this kind at any court before the next court of quarter sessions; but we think it time, with all due deference to the court below, to let the statute take the place of the practice.

In those cases under the poor laws in which a special remedy is provided in the court of quarter sessions that remedy must be pursued. By § 13 of the act of March 21, 1806, 4 Smith, 312, —a statute of frequent reference in our books,—in all cases where a remedy is provided or duty enjoined or anything directed to be done by an act or acts of assembly of this commonwealth, the directions of said acts shall be strictly pursued; and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect. Chester County v. Malany, 64 Pa. 148.

When a person having a domicil and settlement moves from Pennsylvania, he does not lose that settlement until he acquires a new domicil and settlement in the state to which he goes. When he removes from this state and acquires a domicil and a settlement in another, he has no settlement in Pennsylvania. Juniata County v. Delaware Twp. 107 Pa. 74.

Randal certainly never gained a domicil in Colorado, because he never had a true, fixed and permanent home there.

*D. S. Keller, George Hill,* and *J. Nevin Hill,* for defendants in error.—Randal's settlement in Pennsylvania was lost by reason of his having acquired a later settlement in Colorado.

His settlement in Pueblo county having been established, the law is clear that his settlement in Howard township was lost forever.

The settlement of a person continues until he gains a new one. When he removes from this state and acquires a domicil and settlement in another, he has no settlement in Pennsylvania. It might be provided that he should have, by statute, or by long established usage, but is not. Juniata County v. Delaware Twp. 107 Pa. 69.

Where neither the paupers nor their parents are or were citizens of this state, they must be treated as strangers, and, for the present, that district must be regarded as their place of settlement in which they first became chargeable. Limestone Twp. v. Chilisquaque Twp. 87 Pa. 294.

If the appeal was improperly docketed to the May sessions by the clerk, the May sessions having passed and the next term being the September sessions, it was no fault of the appellants; and the court very properly says that they shall not suffer on that account. The intention of appellants, as is shown by the record, was clearly to appeal to the next court of quarter sessions; and they did all that could be required of them to do, *viz.,* by bringing the case within the jurisdiction of that court in due time. After the case is in the sessions that court has surely control over the business of the court to say when a case shall be heard.

PER CURIAM:

Notwithstanding the able and zealous argument of the counsel for the plaintiffs in error, we think this record shows no fatal error. The answer of the learned judge as to the time and manner of filing the appeal appears to be correct. The time of hearing the appeal is not so rigidly fixed by the statute as to deprive the parties of a reasonable time for procuring the evidence.

The finding of the court, that the pauper had acquired a settlement in Colorado, is sustained by the evidence.

Judgment affirmed.